UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
TOFAEL AHMED,

                    Plaintiff,                        **MEMORANDUM**
                                                      **A N D   O R D E R**

     - against -
                                             06 CV 2938 (CLP)

H E TRANSPORT, INC., et al.,

                   Defendants.
-------------------------------------------------------X

On April 26, 2006, plaintiff Tofael Ahmed commenced this action in New York State

Supreme Court, Queens County, seeking damages for personal injuries incurred in a motor

vehicle accident that occurred on November 28, 2005. By Notice of Removal dated June 13,

2006, defendants H E Transport, Inc., Pietz Trucking, Inc., and David Pietz (collectively,

"defendants")[1] removed the action to this Court and filed their Answer on June 26, 2006.

By Notice of Motion dated August 16, 2007, defendants move for summary judgment,

contending that plaintiff has not suffered a "serious injury" as defined in New York Insurance

Law § 5102(d). Plaintiff cross-moves for summary judgment on the issue of defendants'

liability. On June 22, 2007, the parties consented to the jurisdiction of the undersigned for all

purposes.

For the reasons stated below, both motions for summary judgment are denied.

---

[1]Scott R. Rosinski was also named as a defendant in the Complaint but defendants note
that Mr. Rosinski has never been served and thus has not appeared as a defendant in the case; nor
does anyone know where Mr. Rosinski lives at this time. (Defendants' Response to Plaintiff's
Local Civil Rule 56.1 Statement, dated September 14, 2007 ("Defs.' Resp.") ¶¶ 12, 16).

## FACTUAL BACKGROUND

On November 28, 2005, at about 5:00 p.m., plaintiff was traveling eastbound on Hillside Avenue in Queens, New York. (Pl.'s 56.1 Stmnt ¶ 3; Defs.' 56.1 Stmnt ¶ 5).[2] Plaintiff claims that he was stopped at a traffic light just past the intersection of Hillside Avenue and 150th Street when his car was struck in the rear by a 1997 18-wheeler Kenworth truck bearing South Dakota license plate #PR75706, owned by defendant David Pietz, and driven by Scott R. Rosinski. (Pl.'s 56.1 Stmnt ¶¶ 4-8; see Defs.' 56.1 Stmnt ¶ 7).[3] Plaintiff alleges that at the time of the accident, the truck was making a left turn onto 150th Street from Hillside Avenue. (Pl.'s 56.1 Stmnt ¶ 5; Defs.' 56.1 Stmnt ¶ 8).

After the accident, the plaintiff told the police that he did not need assistance and, although he was not working on the day of the accident, plaintiff returned to his job as a waiter at Café Boulevard in Manhattan the following day. (Pl.'s Resp. ¶¶ 10-13;[4] Defs.' 56.1 Stmnt ¶¶ 10-13). Plaintiff conceded at his deposition that he only missed one or two days of work[5] as a result of the accident and he does not seek lost wages in this action. (Pl.'s Resp. ¶¶ 14-15; Defs.' 56.1

---

[2]Citations to "Pl.'s 56.1 Stmnt" refer to plaintiff's Local Civil Rule 56.1 Statement dated August 16, 2007. Citations to "Defs.' 56.1 Stmnt" refer to defendants' Local Civil Rule 56.1 Statement dated August 16, 2007.

[3]In defendants' response to plaintiff's 56.1 Statement, filed September 14, 2007, they deny striking plaintiff's vehicle in the rear while he was stopped, and they deny that the impact was either "sudden or forceful." (Defs.' Resp. ¶¶ 4-5).

[4]Citations to "Pl.'s Resp." refer to plaintiff's response to defendants' Local Civil Rule 56.1 Statement, dated September 14, 2007.

[5]Defendants note that during the week after the accident, plaintiff worked a full 40-hour week with three hours of overtime, and the two alleged missed days do not appear to be confirmed by plaintiff's employer's records. (Defs.' 56.1 Stmnt ¶¶ 13-14).

Stmnt ¶¶ 14-15). Plaintiff, however, contends that even though he returned to work, he "was limited in his activities and was not able to perform all his usual and customary activities at work," and eventually left his job as a waiter in order to take a lower paying job that did not require him to exert himself physically. (Pl's. Resp. ¶¶ 13-15).

Plaintiff first sought medical treatment on November 29, 2005, the day after the accident, from L&B Medical, P.C. ("L&B"). (Defs.' 56.1 Stmnt ¶ 16). Treatment at L&B continued under the care of Lev Bentsianov, M.D. for six months at the rate of approximately three visits a week, ending on or about March 20, 2006.[6] (Pl's Resp. ¶¶ 16-17). On April 10, 2006, plaintiff was examined by a neurologist/neurosurgeon, Dr. Richard Radna. (Id. ¶ 18; see Defs.' 56.1 Stmnt ¶ 18). Plaintiff contends that he has seen Dr. Radna on two other occasions, March 7, 2007 and September 10, 2007, and that he will continue to see the doctor periodically. (Pls.' Resp. ¶ 18). Plaintiff quotes the statutory definition of "serious injury" and further contends that he has sustained "serious injuries" and that he has been recommended for surgery. (Id. ¶¶ 19-21).

Defendants not only dispute plaintiff's claim of serious injury (see Defs.' 56.1 Stmnt ¶¶ 19-20), but they also dispute his claim that "[t]here was extensive damage to the rear and rear passenger side" (Pl's. Resp. ¶ 9) of plaintiff's vehicle. (See Defs.' 56.1 Stmnt ¶ 9 (noting that the damage "consisted of a dent in the rear driver's side quarter panel, one broken driver's side rear light, and a detached rear bumper")).

_____

[6]Defendants contend that treatment at L&B continued until April 5, 2006. (Defs.' Resp. ¶ 17). The Court notes that plaintiff's 56.1 Statement listed the end date for his treatment as March 20, 2007, approximately sixteen months after the accident, which is apparently a typographical error. Dr. Bentsianov's final report states that plaintiff's treatment ended after approximately six months. (See plaintiff's Affirmation in Opposition to defendants' motion for summary judgment, dated September 14, 2007 ("Pl.'s Aff. in Opp."), Ex. C).

## DISCUSSION

A. Summary Judgment Standards

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Thompson v. Gjivoje, 896 F.2d 716, 720 (2d Cir. 1990). Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, see Egelston v. State Univ. Coll. at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976); Gibralter v. City of New York, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and should be applied sparingly"), the Court should not grant summary judgment unless "it is quite clear what the truth is [and] that no genuine issue remains for trial." Auletta v. Tully, 576 F. Supp. 191, 195 (N.D.N.Y. 1983) (internal quotation marks and citations omitted), aff'd, 732 F.2d 142 (2d Cir. 1984). In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 436 (2d Cir. 1999) (stating that "[w]hen considering a motion for summary judgment the court must draw all factual inferences and resolve all ambiguities in favor of the nonmoving party").

Once the moving party discharges its burden of proof under Rule 56(c), the party opposing summary judgment "has the burden of coming forward with 'specific facts showing that there is a genuine issue for trial.'" Phillips v. Kidder, Peabody & Co., 782 F. Supp. 854, 858

4

(S.D.N.Y. 1991) (quoting Fed. R. Civ. P. 56(e)). Rule 56(e) "provides that a party opposing a

properly supported motion for summary judgment may not rest upon mere allegation or denials

of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. Indeed, "the mere existence

of *some* alleged factual dispute between the parties" alone will not defeat a properly supported

motion for summary judgment. Id. at 247-48 (emphasis in original). Rather, enough evidence

must favor the non-moving party's case such that a jury could return a verdict in its favor. Id. at

248 (internal citation omitted).


B.  Serious Injury Threshold

　　　　Defendants move for summary judgment seeking dismissal of plaintiff's claims and

contending that plaintiff did not suffer a "serious injury" sufficient to satisfy the threshold set by

New York Insurance Law § 5102(d). Under the no-fault law, defendants have the initial burden

of establishing a prima facie case showing that plaintiff did not sustain a serious injury.

See Gaddy v. Eyler, 79 N.Y.2d 955, 956-57, 591 N.E.2d 1176, 1177, 582 N.Y.S.2d 990, 991

(1992). The plaintiff then has the burden to come forward with objective medical evidence

sufficient to raise a material issue of fact as to whether plaintiff sustained a serious injury. See

id., 79 N.Y.2d at 957, 591 N.E.2d at 1177, 582 N.Y.S.2d at 991; see also Toure v. Avis Rent A

Car Sys., Inc., 98 N.Y.2d 345, 350, 774 N.E.2d 1197, 1199, 746 N.Y.S.2d 865, 868 (2002).

Plaintiff's evidence must be in the form of sworn affidavits from physicians, see Ebewo v.

Martinez, 309 F. Supp. 2d 600, 604 (S.D.N.Y. 2004) (citing Morrone v. McJunkin, No. 98 CV

2163, 1998 WL 872419, at *2 (S.D.N.Y. Dec. 15, 1998)), and while defendants may rely on

unsworn reports from plaintiff's doctors, defendants' retained physicians must present sworn

5

affidavits. Id.[7]

Under the law, there are nine categories of injury that qualify as a serious injury: 1) death; 2) dismemberment; 3) significant disfigurement; 4) fracture; 5) loss of a fetus; 6) permanent loss of use of a body organ, member, function or system; 7) permanent consequential limitation of use of a body organ or member; 8) significant limitation of use of a body function or system; and 9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the injury or impairment. See Covey v. Simonton, 481 F. Supp. 2d 224, 237-38 (E.D.N.Y. 2007). An injured party who suffers "minor" injuries that do not fall within one of these categories has no right to recover for pain and suffering, see id. at 238; see also Yanez v. City of New York, 29 F. Supp. 2d 100, 113 (E.D.N.Y. 1998), and the New York courts have held that the no-fault statute is to "be strictly construed." Liberty Mutual Ins. Co. v. United States, 490 F. Supp. 328, 330 (E.D.N.Y. 1980) (citing cases); see also Stossel v. Fleyshmaker, 117 Misc.2d 454, 455, 458 N.Y.S.2d 484, 485 (Kings Co. 1983).

Plaintiff claims that as a result of the accident, he suffered "severe limited range of motion in his cervical spine and lumbar spine." (Pl's. Aff. in Opp. ¶ 8). Plaintiff asserts that both Dr. Bentsianov and Dr. Radna found that as a result of the accident on November 28, 2005, plaintiff continues to suffer from significant limitations in movement in his cervical and lumbar spine, and that these injuries are permanent and serious. (Id. ¶¶ 10-11). In support of these

---

[7]Here, both plaintiff and defendants have presented sworn affidavits from their respective physicians.

claims, plaintiff attached to his motion papers certain MRI reports that allegedly show herniated discs in both his cervical and lumbar spine. (Id. ¶ 9, Ex. B).

1) The Cervical Spine

As an initial matter, defendants object to plaintiff's reliance on these MRI reports and films, which appear to have been taken in March 2007. Defendants contend that these March reports constitute new medical information that was not previously disclosed to defendants until after defendants' summary judgment motion was filed.[8] (Defs.' Reply Aff. at 1).[9] Indeed, defendants note that plaintiff is now claiming a new injury never before asserted in this litigation, and they move to preclude plaintiff from claiming this newly disclosed cervical herniation. (Id.; Defs.' Reply Mem. at 5-6).[10] Specifically, defendants note that during the course of discovery, plaintiff's counsel served defendants with authorizations and copies of what was represented to be plaintiff's complete medical record, including records from L&B and Dr. Radna. (Defs.' Reply Aff. at 1-2). As of August 2006, defendants were under the impression that they had received all of plaintiff's records. (Id.) These new MRI films were not included in the documents produced prior to August 2006.

_____

[8]Although these MRI reports are allegedly based on examinations conducted on March 13, 2007, plaintiff's counsel asserts that the reports were only recently received by his office. (Pl's. Aff. in Opp. at 3 n.1).

[9]Citations to "Defs.' Reply Aff." refer to defendants' Reply Affirmation, dated September 28, 2007.

[10]Citations to "Defs.' Reply Mem." refer to defendants' Reply Memorandum of Law, dated September 28, 2007.

a) Plaintiff's Treatment

Following the accident, plaintiff was treated at L&B, where he complained of neck and back pain. (Defs.' Reply Mem. at 7-8; Pl.'s Aff. in Opp. ¶¶ 14-16, Ex. C). The records from the first visit indicate that although plaintiff complained of neck pain, he had full range of motion in his neck. (Defs.' Aff. in Supp. at 5, Ex. F).[11] Indeed, a cervical MRI taken a month later showed no bulging or herniated discs. (Id., Ex. H).

Plaintiff then saw a physical therapist on 60 occasions over a period of seventeen weeks, during which time he complained of "pain and tightness" in his neck. (Id., Ex. I). However, by December 13, 2005, only 2 weeks after the accident, the therapist remarked that the pain was "decreasing [in] intensity." (Id., Ex. I). From January 14, 2006 until April 6, 2006, plaintiff had no complaints of neck pain except on two occasions, February 9, 2006 and February 15, 2006. (Id. at 5-6). Plaintiff's chiropractor's notes show that plaintiff only complained twice of neck pain, on January 30, 2006 and March 16, 2006. (Id. at 6, Ex. J). On March 15, 2006, IMEs were conducted on behalf of the no-fault carrier by an orthopedist, Dr. Benjamin Nachamie, a neurologist, Dr. Wendy Cohen, and a chiropractor, Brian Wolin, D.C. (Defs.' Aff. in Supp., Ex. K). Two of these doctors found full range of motion in plaintiff's cervical spine and none of them noted any objective findings of any cervical or thoracic disability, all concluding with a diagnosis of "resolved sprain/strain." (Id.) However, each of these doctors concluded that plaintiff's injuries were causally related to the accident on November 28, 2005. (Id.)

In response to this Court's discovery Order, plaintiff provided expert reports from Dr.

---

[11]Citations to "Defs.' Aff. in Supp." refer to defendants' Affirmation in Support of the motion for summary judgment, dated August 16, 2007.

Bentsianov, dated March 26, 2007, and from Dr. Radna, dated March 7, 2007. (Defs.' Reply Aff. at 2). These reports were in turn provided to defendants' expert neurologist, Dr. Lechtenberg, for review. (Id.) Dr. Richard Lechtenberg conducted an examination of plaintiff on May 2, 2007, and memorialized his findings in an expert report dated May 6, 2007. (Defs.' Aff. in Supp. at 9, Ex. L). He noted that plaintiff had no complaints of neck pain at that time. (Id.) Dr. Lechtenberg also noted that "the inconsistency between [plaintiff's] performance on the examination and his incidental movements suggest[s] a willful effort to exaggerate his apparent neurologic impairment." (Id.)

　　　b) The Newly Disclosed MRIs

　　　Defendants assert that it was not until September 11, 2007, after defendants' motion for summary judgment was filed, that defendants learned of the existence of the new cervical and lumbar MRIs that were taken of plaintiff on March 13, 2007, a month before the cutoff date for plaintiff's expert discovery. (Defs.' Reply Aff. at 2). Not only were the films of these MRIs not provided to defendants or defendants' expert, Dr. Lechtenberg, during discovery, but these MRIs were not discussed in either Dr. Radna's or Dr. Bentsianov's previously disclosed expert reports. (Id. at 3). Defendants assert that not only do these new MRIs show the existence of a herniated cervical disc that was not present on an earlier cervical MRI performed on plaintiff, but the MRIs also show that the bulging disc at L4/L5 no longer exists and that the herniated disc at L5/S1 no longer impinges on the spinal canal. (Id. at 2). In addition to these new MRIs, plaintiff also submitted an additional expert report from Dr. Radna, dated September 10, 2007, that was not disclosed during the time frame set for expert disclosure. (Id. at 3).

　　　Rule 37(c)(1) provides that evidence not disclosed during the course of discovery, as

required by Rule 26(a) or 26(e)(1), shall not be admitted into evidence at trial or on a motion, unless the failure to disclose is harmless or substantially justified. Fed. R. Civ. P. 37(c)(1). Thus, a party is obligated to amend and supplement discovery at the risk of preclusion. Id. Defendants assert that although Rule 26(e)(1) requires a party to supplement disclosure, the Rule cannot be asserted as a basis for claiming new theories of damages never raised before. See Oceans Cuisine Ltd. v. Fishery Prods. Int'l, Inc., No. 05 CV 3613, 2006 WL 1071578, at *5, *7 (E.D.N.Y. April 21, 2006).

Defendants argue that they have been unduly prejudiced because, in now asserting that he suffers from a herniated cervical disc, plaintiff has claimed a new injury that was not asserted previously and that did not appear in plaintiff's earlier MRIs and expert reports. Not only were defendants not made aware of this claim and the supporting documentation until after the motion for summary judgment was filed, but their expert was never given notice or an opportunity to examine plaintiff and render his own expert opinion as to the validity of this new claim.

Plaintiff's failure to disclose the MRI reports at issue was not substantially justified. See Fed. R. Civ. P. 37(c)(1); Oceans Cuisine Ltd. v. Fishery Prods. Int'l, Inc., 2006 WL 1071578, at *5, *7. Although plaintiff's counsel claims that he did not receive these MRI reports until just recently, it is clear that at the very least, plaintiff, and presumably his physician, were aware that the MRIs had been performed as far back as March 2007. If there was a problem obtaining the records, counsel could always have applied for a court-ordered subpoena. No such application was ever made. Indeed, no satisfactory explanation has been provided as to why these films were not obtained and disclosed earlier. The Court is also troubled by the fact that an earlier MRI of the plaintiff's cervical spine taken shortly after the accident shows no injury, and yet the

plaintiff's doctors have offered no explanation as to how this newly discovered cervical herniation, which appears for the first time a year and a half after the accident, was somehow causally related to the accident and yet not apparent on the films.[12]

However, while defendants are correct that Dr. Radna's report of March 13, 2007, in which he discusses the MRIs taken on March 10, 2007, makes no mention of the herniated disc at L5/S1 impinging on the spinal canal, the herniation itself continues to appear on the films. Since the existence of the herniation at L5/S1 was already known before the second set of MRIs were taken on March 10, 2007, plaintiff's failure to disclose the new MRI report, insofar as it relates to plaintiff's lumbar spine, while unjustified, was harmless, because it is not being used as a basis for claiming new injuries never raised before. See Oceans Cuisine Ltd. v. Fishery Prods. Int'l, Inc., 2006 WL 1071578, at *5, *7. Indeed, plaintiff's newly disclosed MRIs are, if anything, harmful to his claim of lumbar injury.

Accordingly, the newly disclosed MRIs of plaintiff's cervical injuries will not be considered in connection with this motion or at trial, but the MRIs of plaintiff's lumbar herniation, which has been present since the first MRIs were taken on December 26, 2005, will not be excluded.

---

[12]The Court is also troubled by the discrepancies between Dr. Radna's expert report, where he makes no mention of a causal connection between the accident and plaintiff's lumbar injuries, and Dr. Radna's affidavit, in which he merely makes a blanket statement as to causation. (See Def.'s Reply Aff. at 3, Ex. P; Pl.'s Aff. in Opp. ¶¶ 10-11, Ex. D).

2) Lumbar Spine

With respect to plaintiff's claims of injury to his lumbar spine, plaintiff claims that he

sustained a herniated disc at L5/S1 and a bulging disc at L4/L5. This claim is based on an MRI

taken on December 26, 2005. (Defs.' Aff. in Supp. at 7, Ex. M). According to the initial

evaluation of plaintiff at L&B, plaintiff complained of lower back pain but he had full range of

motion, except on flexion, which was restricted to a minor degree. (Id. at 5, Ex. F). His physical

therapist's reports show that although plaintiff had consistent complaints of lower back pain from

the time of the accident through mid-January 2006 (id., Ex. I), there were no objective findings

until the MRI results on December 26, 2005 (id. at 7, Ex. M), three weeks after the first set of

MRIs came up negative with respect to herniation. (Id., Ex. H).[13] On February 17, 2006,

plaintiff told the therapist that he "strained [his] back yesterday." (Id. at 8, Ex. I). However, at

his deposition taken almost a year later on February 9, 2007, plaintiff denied ever re-injuring his

back or telling his doctor that he had. (Id.; Pl.'s Dep. at 62-63).[14]

By March 13, 2006, the physical therapist's records show that there was improvement as

to pain and intensity to the point that by early April, plaintiff was complaining of "mild pain on

low back" and "mild tightness." (Id., Ex. I). An EMG study conducted on January 4, 2006, five

weeks after the accident, showed no sign of lumbar radiculopathy or other nerve damage. (Id.,

Ex. N). The doctors retained to conduct examinations on behalf of the no-fault carrier all agreed,

---

[13]The Court finds it curious that plaintiff's complaints to his physical therapist indicated
ameliorating symptoms over the same time period. (Defs.' Aff. in Supp. at 8, Ex. I).

[14]Citations to "Pl.'s Dep." refer to the transcript of plaintiff's deposition taken February 9,
2007, and attached as Exhibit D to Def.'s Aff. in Supp.

based on their examinations on March 15, 2006,[15] that any sprain/strain that plaintiff had suffered was resolved. (Id., Ex. K). Similarly, Dr. Lechtenberg found no objective neurological deficits in plaintiff's lumbar spine. (Id. at 9, Ex. L).

Defendants urge the Court to reject the plaintiff's experts' opinions as lacking in credibility and contradicted by their own prior reports. See Magarin v. Kropf, 24 A.D.3d 733, 734, 807 N.Y.S.2d 398, 399 (2d Dep't 2005) (disregarding a physician's affirmation where he failed to reconcile prior reports with findings in subsequent reports); Powell v. Hurdle, 214 A.D.2d 720, 720, 625 N.Y.S.2d 634, 635 (2d Dep't 1995) (noting that although the credibility of a physician's affidavit should not be weighed on a motion for summary judgment, doing so is appropriate where the affirmation appears to be tailored to the requirements of the no-fault law); see also Betheil-Spitz v. Linares, 276 A.D.2d 732, 732-33, 715 N.Y.S.2d 435, 435 (2d Dep't 2000) (same, where plaintiff's physicians merely reinterpreted the findings of plaintiff's original treating physicians, in which there was no mention of seriousness or permanency, and no suggestion that the accident was the cause of the plaintiff's injuries).

Defendants point first to Dr. Bentsianov's report of December 5, 2005 in which he reported that upon examining plaintiff the day after the accident, he observed "painful spasms and severely restricted range of motion in plaintiff's cervical and lumbar spine." (Defs.' Reply Mem. at 7-8 (citing Pl.'s Aff. in Opp., Ex. C)). His report, however, fails to describe the objective medical tests employed to make this determination, see Toure v. Avis Rent A Car Sys.,

---

[15]Plaintiff objects to defendants' reliance on these reports, contending that they were never disclosed in discovery. However, the reports were conducted on behalf of plaintiff's no-fault insurer and were therefore equally available to him. (See Defs.' Aff. in Supp. at 8-9, Ex. K).

Inc., 98 N.Y.2d at 358, 774 N.E.2d at 1205, 746 N.Y.S.2d at 873 (holding that the defendants' motion to set aside the verdict should have been granted given the inadequacy of the objective medical proof supporting the opinion of plaintiff's expert), and the report fails to indicate the objective medical test used to diagnose fibromyalgia and myositis. Dr. Bentsianov's report also fails to provide any opinion that causally ties plaintiff's injuries to the accident.

Similarly, Dr. Dale Alexander, also from L&B, examined plaintiff on January 4, 2006 and reported plaintiff's subjective complaints of "dull, non-radiating neck pain," and "intermittent lower back pain radiating to the hips." (Defs.' Reply Mem. at 8-9 (citing Pl.'s Aff. in Opp., Ex. C)). The report, however, noted no restrictions in movement for the cervical spine and only limitations on flexion in the lumbar spine. (Id. at 9 (citing Pl.'s Aff. in Opp., Ex. C)). Again, the doctor's report does not describe the objective medical tests performed, but does conclude with a diagnosis of "cervical and lumbar muscle post-traumatic sprain syndrome." (Id.) Dr. Alexander recommended an EMG to rule out "lumbar radiculopathy with compression of the L/5 nerve roots." (Id.) This study, which was conducted on January 4, 2006, was in fact negative. (Id.) While Dr. Alexander stated that it was his opinion "that there [was] a reasonable degree of medical certainty that the patient's physical injuries were causally related to the accident," he provided no explanation for this conclusion. (Pl.'s Aff. in Opp., Ex. C).

The final report generated by Dr Bentsianov is dated April 19, 2006, and recites plaintiff's complaint of pain upon palpation, an unquantified decrease in range of motion, and a final diagnosis of cervical and lumbar sprain, fibromyalgia, and myositis. (Defs.' Reply Mem. at 9-10 (citing Pl.'s Aff. in Opp., Ex. C)). Dr. Bentsianov concluded that there was a "direct" causal relationship between the alleged accident of November 28, 2005 and plaintiff's injuries,

14

simply because the patient did not report experiencing any of the symptoms set forth in the report until after the accident, but he stated that he believed that plaintiff had received "maximum medical improvement" for his injuries. (Id. at 10 (citing Pl.'s Aff. in Opp., Ex. C)). This finding is consistent with Dr. Radna's conclusion that any further treatment after six months of physical therapy would be palliative, not curative, suggesting that plaintiff's injuries are indeed permanent. (See Pl.'s Aff. in Opp., Ex. D).

Dr. Radna first saw plaintiff on April 10, 2006, at which time he reported that according to plaintiff, plaintiff had not returned to work until five days following the accident, a representation that contradicts plaintiff's own testimony at deposition that he returned to work the day after the accident. (Id. at 10-11 (citing Pl.'s Aff. in Opp., Ex. D; Pl.'s Dep. at 10-12)). Dr. Radna noted that the prior conservative treatment received by plaintiff had "largely ameliorated" his problems, and although the doctor noted moderate spasms in both the cervical and lumbar spines, he did not explain how he elicited the findings. (Id. at 11 (citing Pl.'s Aff. in Opp., Ex. D)). Nowhere in the report does the doctor make an explicit causal finding between the accident and plaintiff's injuries, and although he recommends further physical therapy, the use of braces and muscle relaxants, none of the recommendations were followed and treatment ceased. (Id.) However, it should be noted that plaintiff's cessation of treatment is consistent with Dr. Radna's finding that therapy was only providing temporary relief. (See Pl.'s Aff. in Opp., Ex. D).

Where there is a claim of significant limitation of use, the "significance of the limitation must be supported by 'credible medical evidence and must be objectively measured and quantified.'" DeJesus v. Rafael, No. 00 CV 5137, 2003 WL 21305358, at *2 (S.D.N.Y. June 5,

2003) (quoting <u>Ventra v. United States</u>, 121 F. Supp. 2d 326, 333-34 (S.D.N.Y. 2000)).

"Subjective complaints of pain do not suffice." <u>Id.</u> New York courts have consistently held that

because a diagnosis of loss of range of motion is dependent on the patient's subjective

expressions of pain, it is not sufficient to support an objective finding of a serious injury. <u>Gillick</u>

<u>v. Knightes</u>, 279 A.D.2d 752, 752, 719 N.Y.S.2d 335, 336 (3d Dep't 2001) (citing cases); <u>see</u>

<u>also</u> <u>Mastrantuono v. United States</u>, 163 F. Supp. 2d 244, 254 (S.D.N.Y. 2001) (holding that a

plaintiff must demonstrate "'more than . . . a minor, mild or slight limitation of use'") (citation

omitted).

  While MRIs, x-rays and CT scans are clearly objective evidence, the courts have also

considered passive range of motion tests based on objective criteria, such as straight-leg raising

tests and observations of spasms, as objective evidence because they are not based on the

patient's complaints of pain. <u>See</u> <u>DeJesus v. Rafael</u>, 2003 WL 21305358, at *2; <u>Mastrantuono v.</u>

<u>United States</u>, 163 F. Supp. 2d at 255. "To prove the extent of a physical limitation, 'an expert's

designation of a numeric percentage of a plaintiff's loss of range of motion can be used to

substantiate a claim of serious injury.'" <u>Bewry v. Colonial Freight Sys.</u>, No. 01 CV 5634, 2002

WL 31834434, at *3 (S.D.N.Y. Dec. 17, 2002) (quoting <u>Toure v. Avis Rent A Car Sys., Inc.</u>, 98

N.Y.2d at 350, 774 N.E.2d at 1200, 746 N.Y.S.2d at 868). "In addition, 'an expert's qualitative

assessment of a plaintiff's condition also may suffice, provided that the evaluation has an

objective basis and compares the plaintiff's limitations to the normal function, purpose and use

of the affected body organ, member, function or system.'" <u>Id.</u> (quoting <u>Toure v. Avis Rent A Car</u>

<u>Sys., Inc.</u>, 98 N.Y.2d at 350, 774 N.E.2d at 1200, 746 N.Y.S.2d at 868). Moreover, there must be

a "recent examination" of plaintiff on which the objective medical findings have been made,

see Kauderer v. Penta, 261 A.D.2d 365, 366, 689 N.Y.S.2d 190, 191 (2d Dep't 1999); "'any significant lapse of time between the cessation of the plaintiff's medical treatments after the accident and the physical examination conducted by his own expert must be adequately explained.'" DeJesus v. Rafael, 2003 WL 21305358, at *3 (citing Grossman v. Wright, 268 A.D.2d 79, 84, 707 N.Y.S.2d 233, 237 (2d Dep't 2000)). "The . . . rationale for requiring a recent examination . . . is patently obvious . . . . [T]he absence of proof of a recent medical examination leaves an important evidentiary vacuum . . . where the plaintiff is claiming some form of permanent or significant injury." Thompkins v. Santos, No. 98 CV 4634, 1999 WL 1043966, at *5 (S.D.N.Y. Nov. 16, 1999).

It is clear that the plaintiff's own statements are not sufficient to support a claim of permanent injury. See Zarate v. McDonald, 31 A.D.3d 632, 633, 819 N.Y.S.2d 288, 290 (2d Dep't 2006); Gomez v. Epstein, 29 A.D.3d 950, 951-52, 818 N.Y.S.2d 101, 102 (2d Dep't 2006); Mazzotta v. Vacca, 289 A.D.2d 305, 306, 733 N.Y.S.2d 916, 917 (2d Dep't 2001). However, a review of the objective medical evidence provided by plaintiff's doctors to substantiate plaintiff's claim of serious injury reveals that there is a material issue of fact as to whether plaintiff sustained a serious injury. See Gaddy v. Eyler, 79 N.Y.2d at 957, 591 N.E.2d at 1177, 582 N.Y.S.2d at 991; see also Toure v. Avis Rent A Car Sys., Inc., 98 N.Y.2d at 350, 774 N.E.2d at 1199-1200, 746 N.Y.S.2d at 868.

The plaintiff has provided an initial MRI from a month after the accident indicating a bulging disc and a herniated disc in the lumbar spine. Although the most recent MRIs taken in March 2007 show that the bulging disc is gone and the herniated disc has improved to the point that it no longer impinges on the spinal canal, the herniation in the lumbar spine remains. New

17

York courts have found that a bulging disc alone is sufficient to constitute a serious injury within the meaning of Insurance Law § 5102(d). See Stein v. Bentor, No. 03 CV 5488, 2005 WL 2244831, at *9 (E.D.N.Y. September 15, 2005) (quoting Hyacinthe v. U-Haul Co., 278 A.D.2d 369, 370, 718 N.Y.S.2d 363, 364 (2d Dep't 2000)); see also Morrone v. McJunkin, 1998 WL 872419, at *4 (noting that a disc herniation may constitute a "serious injury" and finding a triable issue where parties dispute degree of injury suffered). However, a plaintiff must also provide "objective evidence of the extent or degree of the alleged physical limitations resulting from the disc injury." Ebewo v. Martinez, 309 F. Supp. 2d at 604-05 (quoting Elfiky v. Harris, 301 A.D.2d 624, 624-25, 754 N.Y.S.2d 59, 60 (2d Dep't 2003)); see also Sainte-Aime v. Ho, 274 A.D.2d 569, 570, 712 N.Y.S.2d 133, 135 (2d Dep't 2000); Boehm v. Estate of Mack, 255 A.D.2d 749, 680 N.Y.S.2d 732 (3d Dep't 1998) (declining to find that plaintiff had not suffered serious injury even though plaintiff seemed to have fully recovered but then deteriorated and where there was evidence of disc herniation).

In this case, the plaintiff's experts' reports showing that plaintiff experienced reduced range of motion in his lumbar spine are sufficient to raise a material issue of fact as to whether plaintiff has suffered a serious injury. The fact that the objective medical examinations of plaintiff's lumbar range of motion conflict over time and among doctors supports the conclusion that summary judgment would be inappropriate at this time. See Rand v. Volvo Finance N. Am., No. 04 CV 0349, 2007 WL 1351751, at *3 (E.D.N.Y. May 8, 2007) (noting that it "is not for the court to decide which expert's opinion is more persuasive;" that dispute creates a credibility question for the jury with plaintiff being entitled to all favorable inferences on the motion); see also O'Sullivan v. Atrium Bus Co., 246 A.D.2d 418, 419-20, 668 N.Y.S.2d 167, 168 (1st Dep't

1998) (holding that conflicting medical opinions about spinal injury creates a question of fact that cannot be decided on summary judgment); <u>Flanagan v. Hoeg</u>, 212 A.D.2d 756, 757, 624 N.Y.S.2d 853, 853-54 (2d Dep't 1995) (holding that conflicting reports "establish a question of fact regarding whether the injured plaintiff suffers from a bulging or herniated disc and whether the plaintiff's limited range of motion of the lumbar spine constitutes a serious injury").

Dr. Bentsianov's original report indicates that his initial measurements of plaintiff's range of motion the day after the accident registered a percent loss from "normal" of 12 percent. A 12 degree restriction is not "significant" under New York law. <u>Hodder v. United States</u>, 328 F. Supp. 2d 335, 356 (E.D.N.Y. 2004) (collecting cases) (stating that "less than 20% limitation has been found insufficient to survive a motion for summary judgment"). Moreover, only a month later, on January 4, 2006, Dr. Alexander's examination of plaintiff found full range of motion in both the cervical and lumbar spine. However, Dr. Radna's objective measurements at his initial examination of plaintiff on April 10, 2006, including straight leg raising and "Spurling maneuver" tests, indicated that plaintiff was suffering reduced range of motion of 60% in all directions in both his cervical and lumbar spine, well above the 20% threshold for "significant limitation." (<u>See</u> Pl.'s Aff. in Supp., Ex. D). <u>See also</u> <u>Hodder v. United States</u>, 328 F. Supp. 2d at 356. Furthermore, Dr. Bentsianov's measurements a year and a half after the accident, on March 20, 2007, continued to show percent losses in range of motion for various directions ranging from 7% to 57%, including a 57% loss of range of motion for flexion in plaintiff's lumbar spine, where he continues to suffer from a herniated disc at L5/S1. (<u>See</u> Pl.'s Aff. in

Supp., Ex. C).[16]

Defendants contend that plaintiff has failed to explain why, if as the records show, plaintiff's symptoms seemed to be improving with therapy, the plaintiff is suffering from a permanent injury. Although Dr. Radna recommended continued physical therapy and treatment, plaintiff apparently did not follow that advice and ceased further treatment. The absence of any explanation for the cessation of treatment would be problematic for plaintiff's case. See Pommels v. Perez, 4 N.Y.3d 566, 574, 830 N.E.2d 278, 282-83, 797 N.Y.S.2d 380, 384 (2005); Baez v. Rahumateli, 24 A.D.2d 256, 256, 808 N.Y.S.2d 171, 172, aff'd, 6 N.Y.3d 868, 850 N.E.2d 19, 817 N.Y.S.2d 204 (2006). However, where, as here, there is evidence that further therapy would be only palliative and not curative (see Pl.'s Aff. in Opp., Ex. D), the Court of Appeals has stated that "'[a] plaintiff need not incur the additional expense of consultation, treatment or therapy, merely to establish the seriousness or causal relation of his injury.'" Stein v. Bentor, 2005 WL 2244831, at *8 (quoting Pommels v. Perez, 4 N.Y.3d at 577, 830 N.E.2d at 285, 797 N.Y.S.2d at 387). Here, the cessation of treatment has been sufficiently explained to raise an issue of material fact and therefore survive summary judgment. See id.; see also Rand v. Volvo Finance N. Am., 2007 WL 1351751, at *4.

Defendants further contend that plaintiff has failed to rebut the evidence of a preexisting degenerative spine condition. However, even assuming there was a preexisting condition,

---

[16]The Court finds it curious that Dr. Bentsianov's final report indicates that plaintiff's range of motion decreased over time despite the fact that his symptoms as recorded by the physical therapist appear to have ameliorated over the same period. Defendants' expert, Dr. Lechtenberg, believed that plaintiff was exaggerating his impairment. (See Defs.' Aff. in Supp. at 9, Ex. L). However, the Court finds that Dr. Lechtenberg's belief is a question of fact that the Court may not decide in this motion.

plaintiff has provided evidence sufficient to raise a material issue of fact as to whether the accident of November 28, 2005 exacerbated such a condition. In his final report, Dr. Bentsianov stated that "any pre-existing degenerative changes found in a scan review are irrelevant medically as Mr. Ahmed was asymptomatic prior to the November 28, 2005 trauma." (See Pl.'s Aff. in Supp., Ex. C). See also Stein v. Bentor, 2005 WL 2244831, at *8 (quoting the plaintiff's doctor as concluding "that even if 'the disc bulging was present prior to the trauma from the motor vehicle accident,' the disc changes were 'asymptomatic' and thus 'all the symptoms attributable to those levels are directly related to the motor vehicle accident'"). Therefore, whether plaintiff's symptoms are due to the accident or to a degenerative spine condition that was exacerbated by the impact raises a question of fact that cannot be decided on this motion for summary judgment. See Chaplin v. Taylor, 273 A.D.2d 188, 708 N.Y.S.2d 465 (2d Dep't 2000) (denying summary judgment and noting that defendants had failed to demonstrate that the herniation was not causally related to the accident).

Given that plaintiff was allegedly forced to find new employment as a result of his injuries, and that plaintiff's treating physicians have sworn that his injuries were causally related to the accident, the Court declines to find as a matter of law that plaintiff's herniated disc or other lumbar injury was not caused by or exacerbated by the accident. In light of the conflicting evidence regarding plaintiff's spinal range of motion and the fact that he continues to suffer from a herniated disc, the Court finds that there is sufficient evidence to create a material issue of fact as to whether plaintiff has sustained a serious injury, and cannot conclude as a matter of law that plaintiff has not suffered a significant limitation of use of a body function or system, a serious injury under Insurance Law § 5102(d). See Covey v. Simonton, 481 F. Supp. 2d at 237-238;

Hodder v. United States, 328 F. Supp. 2d at 356.

     Accordingly, defendants' motion for summary judgment is hereby denied.


## C. Plaintiff's Motion for Partial Summary Judgment

     Plaintiff contends that under New York State Vehicle and Traffic Law §§ 1180(a) and

1129(a), he is entitled to partial summary judgment on the issue of liability because he was hit in

the rear by defendants' vehicle at a time when his own vehicle was completely stopped.

     A rear-end collision involving a stopped automobile creates a prima facie case of liability

on the part of the moving vehicle, whether the lead vehicle is stopped at a light or stops suddenly

in traffic. See, e.g., Gross v. Marc, 2 A.D.3d 681, 681, 768 N.Y.S.2d 627, 627 (2d Dep't 2003)

(citing Benyarko v. Avis Rent A Car Sys., Inc., 162 A.D.2d 572, 573, 556 N.Y.S.2d 761, 761-62

(2d Dep't 1990)); Hurley v. Cavitolo, 239 A.D.2d 559, 559, 658 N.Y.S.2d 90, 91 (2d Dep't

1997); Barba v. Best Sec. Corp., 235 A.D.2d 381, 381, 652 N.Y.S.2d 71, 71 (2d Dep't 1997);

Bando-Twomey v. Richheimer, 229 A.D.2d 554, 555, 646 N.Y.S.2d 155, 156 (2d Dep't 1996).

"[A] rear-end collision with a stopped automobile creates a prima facie case of liability in favor

of the operator of the stationary vehicle, and imposes a duty on the operator of the moving

vehicle to explain how the accident occurred." Miller v. Irwin, 243 A.D.2d 546, 546, 663

N.Y.S.2d 110, 111 (2d Dep't 1997).

     In moving for summary judgment, plaintiff has submitted an affidavit claiming that he

was struck in the rear while stopped at the traffic light. (Ahmed Aff. ¶¶ 5-6).[17] Plaintiff contends

---

[17]Citations to "Ahmed Aff." refer to the affidavit of plaintiff, submitted as Exhibit A of plaintiff's Affirmation in Opposition to defendants' motion for summary judgment, dated September 14, 2007.

that since the driver, defendant Rosinski, has never appeared for his deposition and defendants have presented no other witnesses to testify as to the events leading up to the accident, plaintiff's version of the accident is uncontradicted and defendants have failed to offer an explanation excusing their collision with the rear of plaintiff's vehicle.

In response, defendants note that Mr. Rosinski, the driver, has never been properly served and therefore is not a party to the lawsuit. Similarly, while the owner of the vehicle, defendant Pietz, has been served, Pietz was several thousand miles away at the time of the accident and his testimony could shed no light on the question of liability.

While defendants have not presented their own witness as to what transpired on the date of the accident, defendants note that plaintiff's own testimony taken at deposition defeats the motion because plaintiff made it very clear that at the time of the accident, the tractor trailer was "traveling in the opposite direction" from the direction in which plaintiff was traveling. (Pl.'s Dep. at 23). According to his own deposition testimony, plaintiff testified that defendants' truck struck plaintiff's vehicle as the truck was making a left-hand turn, coming toward plaintiff. (Id.) Therefore, this was not a situation where the truck was traveling in the same direction as plaintiff and hit the plaintiff in what would ordinarily be described as a "rear-end collision." Thus, under the circumstances of this case, the cases cited by plaintiff for the proposition that a presumption of liability arises in the case of a hit in the rear do not apply and plaintiff bears the burden of proving defendants' negligence.[18]

---

[18]The Court notes that plaintiff's current motion seeks to impose liability on all of the defendants. However, because plaintiff fails to set forth the basis on which H E Transport and Pietz Trucking should be held liable, and since the Court is recommending denial of the motion for other reasons, the Court need not address further this concern raised by defendants. See Thompson v. Gjivoje, 896 F.2d at 720 (holding that "[a]ll reasonable inferences and any

23

Accordingly, plaintiff's motion for summary judgment on liability is hereby denied.

**SO ORDERED.**

Dated:  Brooklyn, New York
        February 26, 2008

                                            _Cheryl Pollak_
                                            Cheryl L. Pollak
                                            United States Magistrate Judge
                                            Eastern District of New York

---

ambiguities are drawn in favor of the nonmoving party" and a "hypothetical factual dispute will not defeat the motion").